UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PHILLIPS,

                Petitioner,                Case No.  2:14-cv-12766
                                                          Hon. Sean F. Cox

v.

MARY BERGHUIS,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION
TO APPEAL *IN FORMA PAUPERIS***

      This is a habeas case under 28 U.S.C. § 2254. Petitioner Michael Phillips was convicted after a jury trial in the Oakland Circuit Court of three counts of first-degree criminal sexual conduct. MICH. COMP. LAWS §750.520b(1)(a) and (b). Petitioner was sentenced to one term of 8-to-40 years for the first count and two terms of 7-to-40 years in prison for counts two and three. All three terms are being served concurrently. The petition raises five allegations of ineffective assistance of trial counsel.  The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but it will grant permission to proceed on appeal *in forma pauperis*.

**I. Background**

      This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

      The prosecution presented evidence that defendant began having a sexual

relationship with his stepdaughter when she was 12 years old. Witnesses testified that they repeatedly caught defendant and the victim snuggling and sleeping together on the couch. Defendant and the victim would also "sneak off" with one another for hours at a time. This conduct corresponded with a change in the victim's behavior and a decline in her scholastic performance. Defendant's wife at the time—the victim's mother—suspected foul play between the victim and defendant, but the two denied that they were engaged in anything inappropriate. At trial, however, the victim testified that defendant had in fact initiated a sexual relationship with her and that they were having sex several times a week. She did not think that she was being sexually abused at the time because she felt like she was defendant's girlfriend.

When defendant's relationship with the victim's mother soured, defendant moved out of the house. Nevertheless, defendant would sneak into the victim's bedroom at night, and they had sex a few times a week. Defendant gave the victim a cellular telephone so that they could keep in contact, which he told her to keep secret. The victim's father confronted her about her relationship with defendant, but she did not provide details and shared only that they talked a lot. The victim's mother reported her concerns to Child Protective Services.

The victim went to live with her father because her parents thought it would be best to get her out of the environment where they felt something was going on with defendant and their daughter would not talk about it. The victim's father found a cellular telephone hidden between the mattress and box springs of the victim's bed and noted that she had previously denied having a cellular telephone. The victim's father called the police because she was threatening to run away. Although she wanted to see defendant, the police and the victim's father reiterated to her that she was prohibited from seeing him. Even though the victim repeatedly denied that she was having a sexual relationship with defendant, her parents had her physically examined for signs of sexual molestation. At trial, the parties stipulated to the admission of the victim's medical records from Hurley Medical Center, which contained the following physician notation in the discharge summary: "there is no evidence on my exam of damage to her hymen. This does not disprove a sexual relationship."

The victim testified that her relationship with defendant lasted for over one year and ended after she moved in with her father. The victim first told someone about the relationship when she was in ninth grade, when she disclosed it to her boyfriend. Eventually, she told her stepmother, then her sister, and finally a detective because she wanted to rid herself of the emotional strain she had been carrying.

Among the witnesses called by the prosecution was K.M., who testified that defendant showed her pornography and sexually molested her. At the time of the molestation, K.M. was in the fifth grade, and defendant was engaged to her mother and living in their apartment.

*People v. Phillips*, No. 301366, 2013 WL 1223180, at *1-*2 (Mich. Ct. App. Mar. 26, 2013).

Following his conviction and sentence, Phillips filed a motion for a new trial, alleging ineffective assistance of counsel. After a hearing was held on Petitioner's motion, the trial court denied relief, finding that Petitioner was not denied the effective assistance of counsel.

Petitioner then filed a claim of appeal in the Michigan Court of Appeals, raising the following claim:

> I. Mr. Phillips is entitled to a new trial where defense counsel provided constitutionally ineffective assistance by (1) failing to consult with a medical expert regarding evidence of the alleged victim's intact hymen; (2) stipulating to the admission of an inflammatory, unredacted medical report which violated his right to confrontation; (3) failing to challenge unfairly prejudicial other acts evidence; (4) failing to object to an expert's opinion on the ultimate issue; and (5) failing to present alibi evidence on Mr. Phillips' behalf.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Phillips*, 2013 WL 1223180, at *7.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Phillips*, 836 N.W.2d 157 (Mich. 2013) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks omitted). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted). Indeed, under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, U.S. , 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, U.S. , 135

S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*,    U.S.    , 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III. Analysis

The petition asserts five allegations of ineffective assistance of trial counsel. These allegations were presented to the Michigan Court of Appeals during Petitioner's direct appeal, and the state appellate court found that they were without merit. The Court finds that the adjudication of Petitioner's claims by the state court was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner's counsel was ineffective. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. *Id.*

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The Court's

scrutiny of counsel's performance is viewed through a highly deferential lens. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that his counsel's actions constituted sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

Because the state courts rejected Petitioner's claims on the merits, however, it is beyond the scope of review for this Court to evaluate Petitioner's claim *de novo* under the *Strickland* standard. The issue here is much more narrow. The question is whether the conclusion reached by the state court falls within the bounds of reasonable adjudications of Petitioner's claims — a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123.

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. at 105.

6

Deference must be given even in cases "where the state court's reasoning is flawed or abbreviated." *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 131 S. Ct. at 786.

## A. Failure to Consult with Medical Expert

Petitioner first claims that his counsel was ineffective for failing to consult with and hire an expert witness to testify regarding the unlikelihood that the victim's hymen would remain intact after over a year of regular sexual intercourse. The Michigan Court of Appeals found that counsel did not perform deficiently by failing to further explore this line of defense and instead to rely on the jury's "common sense":

> . . . Defendant offered in support of his motion for a new trial before the trial court an unsworn letter by pediatrician Dr. Stephen R. Guertin. Dr. Guertin's letter is over four pages long and summarizes a number of studies addressing the probability of physical findings being present in instances where prepubertal and postpubertal girls have admitted to penile/vaginal intercourse or are pregnant. At the end of the letter, Dr. Guertin summarized his findings:
>
>> The bottom line is that in most studies in which confessed cases are analyzed, there is a better than 50% likelihood of injury. Most of those studies included adolescents, were of adolescents or had subpopulations of adolescents.
>>
>> In summary, in the best study (in my opinion) of frequent penile/vaginal intercourse in post-pubertal girls, three quarters or more of the examinations were abnormal. This does, however, leave 20% to 25% (even in that study) of cases in which post-pubertal girls who had experienced recurrent episodes of intercourse had normal exams.
>
> In response, the prosecution offered a letter by Dr. Mary Smyth from Beaumont Hospital. Dr. Smyth stated that her understanding of the current medical literature

> indicates that "NO, the absence of genitourinary findings upon physical examination of female sexual abuse victims should not lead to" the conclusion that an "intact" hymen proves that a young woman has not been sexually abused. She maintained that "[m]any reports and textbooks contain pictures taken during the examination of abuse victims, as well as non-abused, sexually active females showing normal exams." The trial court considered the proffered evidence, deemed it to be no more compelling than the evidence that was actually presented at trial, and denied defendant's motion for a new trial because it did not find a reasonable probability that, but for counsel's alleged error, the result of the proceedings would have been different.
>
> Although defense counsel did not call an expert witness at trial regarding the likelihood of a person's hymen remaining "intact" in the face of frequent sexual intercourse, he did argue the point repeatedly at trial. When cross-examining the victim and her mother and father, counsel questioned them about the fact that a medical examination revealed that the victim's hymen was intact. Such finding was also admitted into evidence through the victim's medical records. During both the opening statement and closing argument, defense counsel argued that common sense defies the victim's credibility because it would be impossible for the victim's hymen to be intact if she had as much sex with defendant as she asserted.
>
> Even assuming that an expert witness would have bolstered defendant's argument, plaintiff has not proven that counsel's failure to call an expert was objectively unreasonable or that there is a reasonable probability that the result of the proceedings would have been different. See *Strickland,* 466 U.S. at 687–688, 694. There might have been a legitimate strategic reason why counsel did not call an expert witness: counsel may have believed that a common-sense argument regarding injury to a child's hymen after repeated sexual intercourse with an adult man would have a greater chance of success than leaving the hymen issue to battling experts. See *Gioglio*, 296 Mich.App. at 22–23; *Cullen*, 131 S.Ct. at 1407. Indeed, defendant's proffered expert acknowledges that it is possible for a young woman to have a normal genitourinary examination despite sexual intercourse. Furthermore, the testimony from multiple witnesses at trial strongly supported a finding that the victim's allegations of a sexual relationship with defendant are true. As such, defendant's claim of ineffective assistance of counsel on this basis lacks merit.

*Phillips*, 2013 WL 1223180, at *3.

This decision was not an unreasonable application of the clearly established Supreme Court standard. *Richter* itself, the seminal Supreme Court cases setting the standard of review for ineffective assistance of counsel claims in habeas cases, dealt with a claim that trial counsel was ineffective for failing to call expert witnesses. *Richter* states that even though "in some cases

8

counsel would be deemed ineffective for failing to consult or rely on experts, . . . even that formulation is sufficiently general that state courts would have wide latitude in applying it." 131 S. Ct. at 789.

The record here shows that even Petitioner's proffered expert would not have testified definitively that the assaults did not occur. He conceded that even the most favorable study allowed for 20-25% of victims to present with an intact hymen after recurrent episodes of intercourse. Furthermore, as the trial court noted after holding the hearing on the matter, had defense counsel presented an expert witness, the prosecutor "could have responded with essentially equally compelling evidence of its own." Trial Court Order dated June 12, 2012, p. 8. Given the equivocal value of the defense expert testimony, the probability that the prosecutor would have presented an expert to dispute the defense, and the wide latitude Supreme Court law affords state court adjudications of ineffective assistance of counsel claims, it was not objectively unreasonable for the state courts to reject the claim on the merits.

Moreover, it is worth noting that defense counsel did not fail to make use of the fact that the victim's hymen was intact in Petitioner's defense. Far from it. He repeatedly referred to this medical finding and essentially asked the jury to rely on their common sense when considering the victim's claims of sexual intercourse occurring several times a week for a period of over one year. It was not deficient for defense counsel to choose to use this form of attack, rather than turn the trial into a battle of experts in which even the defense expert would have conceded the possibility that the victim's hymen would remain intact despite the repeated acts of sexual intercourse.

As it turns out, the "common sense" defense did not convince the jury, but it does not follow that using expert witnesses instead would have, with a reasonable probability, been more successful. "The court is not obligated to speculate about how a[n] . . . expert might have swayed the jury . . .

9

." *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Accordingly, affording the state court decision the considerable amount of deference it is due under §2254(d), Petitioner's claim must be denied.

## B. Stipulating to Admission of Medical Report

Petitioner next argues that his counsel was ineffective for allowing the examining physician's report regarding the victim to be admitted into evidence instead of demanding that the physician be presented as a witness and subjected to cross examination. Again, the Michigan Court of Appeals fully and reasonably addressed this issue on the merits:

> The medical records contain information that is favorable to the defense: a denial by the victim that defendant had an inappropriate relationship with her, a statement that the victim's hymen was not damaged, and the lack of a definitive conclusion that defendant had a sexual relationship with the victim. Indeed, defendant concedes that "the ultimate finding of the treating physician was favorable to the defense." Thus, counsel's decision to stipulate to the admission of the medical records may have been a legitimate strategic decision. See *Gioglio*, 296 Mich.App. at 22–23; *Cullen*, 131 S. Ct. at 1407. Nevertheless, defendant contends that he did not have the opportunity to confront witnesses who provided what amounted to unsworn testimony in the medical records. Review of the record, however, makes clear that defense counsel had the opportunity to cross-examine any of the lay individuals who may have made hearsay statements. Regarding defendant's ability to cross-examine the medical providers, defendant does not present a compelling argument other than that he did not have the opportunity to cross-examine. According to the medical records, the victim's hymen did not show damage, and the conclusion was possible sexual abuse by defendant. In fact, had defendant had the opportunity to question the medical experts, the record indicates that they may well have testified that it was possible for the victim to have engaged in the amount of sexual activity she alleged and have no damage to the hymen, thus diminishing defendant's common-sense argument that it was completely unrealistic. Finally, it is not reasonably probable that the outcome of defendant's trial would have been different had counsel not stipulated to the admission of the medical records where the notations in the records that refer to comments made by lay individuals are largely cumulative of the lay witnesses' testimony at trial and the testimony of multiple witnesses provided strong evidence that defendant engaged in sexual conduct with the victim. See *Strickland*, 466 U.S. at 694. Accordingly, defendant has not established a claim of ineffective assistance of counsel on this basis.

*Phillips*, 2013 WL 1223180, at *4.

This decision did not unreasonably apply the broad standard established in *Strickland*. In essence, Petitioner is arguing that it would have been preferable to have the live testimony of the medical providers as opposed to a written report so that the medical provider could have been forced under cross-examination to defend the statements in the report. But Petitioner does not explain or show that such live testimony would have been more favorable to the defense. It is entirely possible that had the medical provider testified, he would have strengthened the case against Petitioner by credibly defending his report. The medical record itself merely concluded that there was "possible sexual abuse" despite the intact hymen. It is possible that the medical provider would have defended that conclusion in greater detail to the detriment of counsel's "common sense" defense had he testified. Stipulating to admission of the report rather than risking the dangers of potentially more damaging live testimony is exactly the type of tactical decision that only can be second guessed under the *Strickland* standard with the benefit of hindsight. As the Court of Appeals noted, much of the report was helpful to the defense.

With respect to the non-medical statements in the report that Petitioner states were harmful, Respondent has fully and accurately shown how those matters were otherwise presented at trial and fully subject to cross-examination and ably challenged by defense counsel. *See* ECF 5, pp. 33-34. Again, by stipulating to the report, defense counsel did not lose the opportunity to address these other matters at trial during the cross examination of other witnesses.

Moreover, trial counsel's decision to stipulate to the admission of the report did not prejudice Petitioner because the same evidence would have been introduced eventually through a more lengthy process without stipulations from counsel. *See Burke v. United States*, 261 F. Supp. 2d 854, 862 (E.D. Mich. 2003).

The Court finds that the decision of the state court rejecting this claim was reasonable.

11

**C. Failure to Object to Prior Bad Act Evidence**

Petitioner asserts that his counsel was ineffective for failing to object to the admission of testimony by another young woman that Petitioner sexually assaulted her when she was in the Fifth Grade. The Michigan Court of Appeals found that the evidence was admissible, and therefore counsel was not ineffective for failing to make an objection:

> In the present case, the evidence of sexual conduct between defendant and K.M. had significant probative value that outweighed any danger of unfair prejudice. The evidence was probative because it illustrated defendant's propensity to commit criminal sexual conduct with young girls under his control. Evidence of defendant's propensity to commit criminal sexual conduct can be relevant and admissible because it demonstrates defendant's likelihood of committing criminal sexual conduct toward another victim. See *People v. Mann*, 288 Mich.App. 114, 118; 792 N.W2d. 53 (2010). In addition, defendant's prior criminal sexual conduct upon another child lent credibility to the victim's testimony about defendant's conduct with her. See id. While the evidence may have been prejudicial, the "danger the rule seeks to avoid is that of unfair prejudice, not prejudice that stems only from the abhorrent nature of the crime itself." *People v. Starr*, 457 Mich. 490, 500; 577 N.W2d. 673 (1998).
>
> Defendant argues that the acts to which K.M. testified were "highly dissimilar" from those alleged by the victim in this case and, thus, unfairly prejudicial. We disagree. In both situations, defendant initiated sexual contact with the minor daughter of the woman with whom he was in a relationship and cohabitating. While one responded to his efforts and the other ultimately rebuffed him, defendant in each case used his position of trust as the husband or fiancé of the victim's mother to gain access to the victim and initiate sexual contact.
>
> Because K.M.'s testimony was highly relevant and not unduly prejudicial, the trial court properly admitted the evidence under MCL 768.27a. Moreover, the trial court gave a proper limiting instruction on the use of the "other acts" evidence. As such, defendant's trial counsel was not ineffective for failing to object because the failure to advance a "futile objection does not constitute ineffective assistance of counsel."*People v. Ericksen*, 288 Mich.App. 192, 201; 793 N.W2d. 120 (2010).

*Phillips*, 2013 WL 1223180, at *5.

This allegation fails because Petitioner may not challenge in this Court the state court decision that the testimony in question was admissible under state law. It is "not the province of a

federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id*. Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).

Here, the Michigan Court of Appeals found that counsel was not ineffective for failing to object to the prior bad act evidence because the evidence was admissible. This determination is binding on this Court. *See Bey v. Bagley*, 500 F 3d 514, 519 (6th Cir. 2007); *Estelle*, 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law). Counsel is not ineffective for failing to raise a frivolous or meritless motion or objection. *See Girts v. Yanai*, 501 F.3d 743, 753 (6th Cir. 2007). Accordingly, this allegation cannot form the basis for granting habeas relief because it relies on a premise of state evidentiary law that was rejected by the state courts.

**D. Failure to Object to Expert Testimony**

Petitioner argues that his counsel should have objected to the prosecution expert's testimony that the victim was in fact a victim of sexual abuse because it constituted inadmissible testimony regarding the ultimate issue before the jury. The Court of Appeals agreed that the testimony was improper, but it found that Petitioner had not demonstrated sufficient prejudice to warrant relief:

> In this case, Connell's opinion testimony was clearly improper. See *Peterson*, 450 Mich. at 352. However, this unsolicited, improper testimony did not deny defendant a fair trial. The testimony was brief and accounted for only a small portion of the overall testimony concerning the victim's allegations that defendant had repeated sexual intercourse with her over the period of more than one year. Further, the prosecutor did not attempt to use the

testimony in her closing argument. Although the trial court did not offer a limiting instruction, defense counsel did not request an instruction, and an instruction is not required to cure improper prejudice. See *Beckley*, 434 Mich. at 725. Although defense counsel should have objected to portions of Connell's testimony, relief is not required because defendant has not established a reasonable probability that, but for defense counsel's error, the result of the proceeding would have been different. See *Strickland*, 466 U.S. at 694. There was a significant amount of other evidence introduced by the prosecution that would allow a rational juror to find defendant guilty beyond a reasonable doubt of criminal sexual conduct.

*Phillips*, 2013 WL 1223180, at *6.

This decision did not involve an unreasonable application of the prejudice prong of the *Srickland* standard. Catherine Connell, a child forensic interviewer for the FBI, testified at trial that the complainant was a "complaint victim," meaning that she was a willing participant in her own victimization. The Court of Appeals accepted Petitioner's argument that this testimony amounted to improper opinion testimony on the ultimate question before the jury, and it was therefore improper.

It was reasonably for the state court to nevertheless reject this claim on the basis that Petitioner had not demonstrated that an objection would have, with reasonable probability, altered the outcome of the trial. The prosecutor did not refer to the improper testimony during closing argument, and the state trial court noted that an objection might only have served to draw attention to the comment.

Moreover, as outlined in the statement of facts above, the case against Petitioner was quite strong. It did not merely involve a word-against-word battle between Petitioner and the victim. Other witnesses testified that they repeatedly caught Petitioner and the victim snuggling and sleeping together on a couch. They saw Petitioner and the victim "sneak off" with one another for hours at a time. After Petitioner and the victim lived apart, he gave her a cell phone, despite the fact that the victim's father prohibited it. Petitioner's wife testified that based on her observations of Petitioner's

interactions with the victim that she suspected foul play. Another witness testified that she had a sexual relationship with Petitioner when she was in the Fifth Grade. All this evidence strongly corroborated the victim's testimony regarding the sexual nature of her relationship with Petitioner.

In light of the other evidence offered against Petitioner, it was not objectively unreasonable for the state courts to find that Petitioner had not demonstrated *Strickland* prejudice. Again, the improper testimony was brief, it was not referred to again by the prosecution, and its prejudicial impact was far outweighed by the substantial evidence presented by the prosecution against Petitioner.

**E. Failure to Present Alibi Evidence**

Petitioner's last allegation asserts that his counsel should have called alibi witnesses to contradict the victim's testimony that the first sexual assault occurred sometime in June during the middle of the day before her thirteenth birthday. Petitioner asserts that during that period of time he was either working with a friend during the daytime, or was incarcerated at the Oakland County Jail. The Court of Appeals found that Petitioner failed to demonstrate that his counsel was ineffective for failing to present an alibi defense:

> Finally, defendant argues that his counsel rendered ineffective assistance because he did not present alibi evidence, including the fact that defendant was in the Oakland County Jail for much of June 2003, which is the time frame when the victim's testimony placed the first act of sexual conduct. We disagree. Defendant has neither overcome the presumption that counsel's failure to present this alibi evidence was reasonable trial strategy nor established a reasonable probability that the result of his trial would have been different had counsel presented the alibi evidence. See *Horn*, 279 Mich.App. at 39. "Time is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim." *People v. Dobek*, 274 Mich.App 58, 83; 732 NW2d 546 (2007)."Moreover, an alibi defense does not make time of the essence." *Id*. When the victim was testifying in this case, she was recalling events that happened years earlier, and her testimony regarding the first incident was that it occurred "around the time before" she turned 13. On cross examination, the victim agreed with defense counsel's assertion that "these things" started sometime in June of 2003." However, the victim did not provide specific

15

> dates in her testimony, and defendant was neither in jail the entire month of June nor away from the victim for the entire beginning of July leading up to the victim's thirteenth birthday. Thus, notwithstanding defendant's claim of an alibi, there were days "around the time before" the victim turned 13, i.e., days in June and July, that defendant was available to engage in the sexual conduct with the victim. Furthermore, counsel could have made a legitimate strategic decision not to pursue the alibi defense because he did not want to inform the jury that defendant had been incarcerated. See *Gioglio*, 296 Mich.App. at 22–23; *Cullen*, 131 S.Ct. at 1407. Accordingly, defendant has not established that counsel was ineffective for failing to introduce evidence of defendant's confinement in the county jail or other specific dates of his unavailability.

*Phillips*, 2013 WL 1223180, at *6.

Again, this allegation of ineffective assistance of counsel was reasonably decided against Petitioner by the state appellate court. Petitioner claims that he had a complete alibi for the first count of first-degree criminal sexual assault because he could show that he was never with the victim in the month of June or early July before her thirteenth birthday. Petitioner has records showing that he was in the Oakland County Jail from June 5, 2003, until June 30, 2003. He also alleges that he was working with a friend, Keith Hammonds, during daylight hours from June 1, 2003, until June 4, 2003. This allegation is supported by an affidavit signed by Hammonds. Petitioner alleges that he was not in the same city as the victim from July 1, 2003, to July 10, 2003, the night before the victim's birthday

Trial in this case occurred in the Fall of 2010, when the victim was twenty years old, years after the first acts of molestation. From the perspective of the victim at trial, the assaults began almost half a lifetime ago. Even if the dates given by Petitioner are accepted as true, it would not have provided Petitioner with a strong alibi defense. Neither the prosecutor nor the victim definitively asserted that the first sexual encounters occurred in June of 2003. Rather, the victim merely recalled that her sexual relationship with Petitioner started "before I turned thirteen. Around the time before I did." Trial Tr. I, at 169. It was on cross-examination that defense counsel first

16

characterized the sexual relationship as starting "sometime in June of 2003," to which the victim agreed. *Id.,* at 193. Defense counsel then went on to establish that the victim claimed that the relationship continued until around September or October of 2004. *Id.*, at 194. As the Court reads this record, the victim was not attempting to give a definitive month for the first sexual encounter, other than to say it occurred before she was thirteen years old. The dates of sometime in June of 2003 until Fall of 2004, were used in the context of obtaining the approximate duration of the relationship, and then to support the defense that such a long sexual relationship was inconsistent with an intact hymen.

Had Petitioner presented evidence that he was never in contact with the victim in the month of June, the record suggests that the victim would have simply replied that the assault must have therefore occurred before June. Again, she was testifying about events that occurred years before trial, and the only definitive statement was that the sexual intercourse started when she was twelve years old. In other words, Petitioner's claim is based on the speculative notion that the victim would have stuck with the month of June 2003 even in the face of alibi evidence.

Accordingly, had counsel decided to present an alibi defense, he would have been faced with the real possibility that the victim simply would have moved the date of the first sexual encounters to before June of 2003, yet in doing so he would have had to inform the jury that Petitioner was in Jail for most of that month. Given the questionable strength of the alibi defense, and the fact that it entailed revealing a damaging fact, the conclusion by the state court that counsel was not ineffective for failing to present an alibi defense was not unreasonable. This is especially true given the fact that the alibi defense would only have covered the one of three counts of first-degree criminal sexual conduct.

In conclusion, Petitioner has failed to demonstrate entitlement to relief with respect to any

of his allegations of ineffective assistance of counsel. With respect to all his allegations, Petitioner has failed to establish that "there could be no reasonable dispute" that the state court decision was wrong. *Woods*, 135 S. Ct. at 1376. Rather, reasonable arguments have been made both by the Michigan Court of Appeals and Respondent that Petitioner was not denied the effective assistance of counsel. *Knowles*, 556 U.S. at 105. The Court therefore finds that at a minimum, "fairminded jurists could disagree" on whether the state court adjudication of Petitioner's claims satisfy the *Strickland* standard. *Richter*, 131 S. Ct. at 786. The petition must therefore be denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability given the wide latitude state courts are given in resolving claims of ineffective assistance fo counsel. The Court will therefore deny a certificate of appealability with respect to all of Petitioner's claims.

The Court will, however, grant permission to appeal *in forma pauperis* because any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal *in forma pauperis.*

**SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: October 23, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 23, 2015, by electronic and/or ordinary mail.

S/Jennifer Hernandez McCoy
Case Manager